OPINION OF THE COURT
David B. Saxe, J.
This action by an insurance company, as subrogee, to recover proceeds paid to its insured, Martin Silver, was tried before the court on stipulated facts.
Plaintiff, through his agent, Elsie Simpson, an interior decorator, ordered custom furniture from defendant Wycombe, Meyer & Co., Inc. (Wycombe). The furniture was manufactured by codefendant Jackson-Allen Upholstery Corp. (Jackson-Allen), a subsidiary of defendant Wycombe, at its factory in Catasauqua, Pennsylvania. On or about February 23, 1982, Wycombe sent invoices to plaintiff advising that the furniture was ready for shipment. Plaintiff thereupon tendered payment in full and directed Wycombe to ship one room of furniture but to hold the other until instructed further. Accordingly, one room of furniture was shipped to plaintiff. But before any instructions were received as to the second room of furniture, it was destroyed in a fire which was not due to any negligence on the part of defendants. Fireman’s Fund Insurance Co. paid *718 plaintiff for the loss and seeks to recover the proceeds from defendants on the theory that the risk of loss never passed to the buyer, its insured.
In the absence of contrary agreement by the parties, risk of loss under the Uniform Commercial Code is determined by the manner in which delivery is to be made (Uniform Commercial Code, § 2-509). The original order, documented by defendant Wycombe’s order form, indicates a price of $7,053 “+ del’y,” and all invoices provide for shipment to plaintiff’s home “Truck prepaid”. It is clear, that the provisions of subdivision (1) of section 2-509 of the Uniform Commercial Code govern the issue of when risk of loss passes to the buyer “[wjhere the contract requires or authorizes the seller to ship the goods by carrier”. Where the contract requires the seller to deliver the merchandise at a particular location, risk of loss passes upon tender of the goods at that location (Uniform Commercial Code, § 2-509, subd [1], par [b]) and where the contract does not require the seller to deliver the goods to a particular destination, it passes upon their delivery to the carrier (par [a]). Where the contract provides for delivery at the seller’s place of business or at the situs of the goods, risk of loss passes upon actual receipt by the buyer, if seller is a merchant, and otherwise upon tender of delivery (Uniform Commercial Code, § 2-509, subd [3]).
Under the facts of the case at bar, the terms of the contract as it regards delivery are not stated. It is apparent, however, that regardless of the particular agreement between buyer and seller, defendants have set forth no facts sufficient to place the risk of loss upon plaintiff under any of the cited Uniform Commercial Code provisions. Indeed, Comment 3 to section 2-509 of the Uniform Coim mercial Code makes it clear that “a merchant seller cannot transfer risk of loss and it remains upon him until actual receipt by the buyer, even though full payment has been made and the buyer has been notified that the goods are at his disposal”.
Defendants, however, advance the novel theory that, because of plaintiff’s request that they hold the furniture subject to further instruction, they became mere bailees of the goods and that the provisions of subdivision (2) of *719 section 2-509 of the Uniform Commercial Code should govern this case. They argue that the invoices informing plaintiff that the furniture was ready for shipment constitute acknowledgement of the buyer’s right to possession, transferring the risk of loss pursuant to section 2-509 (subd [2], par [b]) of the Uniform Commercial Code to the buyer.
This position is entirely without merit. The provisions of subdivision (2) of section 2-509 of the Uniform Commercial Code contemplate a situation in which goods are in the physical possession of a third party who will continue to hold them after consummation of the sale. Therefore, this is not a provision appropriately applied to the circumstances at bar which anticipate the passing of title and physical possession more or less simultaneously. Furthermore, bailment requires delivery of the goods to the bailee (see Black’s Law Dictionary [4th ed], p 179). Having concluded that defendants failed to establish delivery of the furniture to plaintiff, by no stretch of the imagination may plaintiff be said to have redelivered it to defendants for safekeeping.
Defendants cannot transform what is clearly a sale of goods into a bailment simply because they acceded to the buyer’s request to postpone delivery. The agreement between buyer and seller clearly contemplates delivery at the buyer’s home and, under the Uniform Commercial Code, risk of loss remains upon a merchant seller until he completes his performance with reference to the physical delivery of the goods (Uniform Commercial Code, § 2-401, subd [2]; § 2-509, subd [3]; § 2-509, Comment 3; Ramos v Wheel Sports Center, 96 Misc 2d 646). It may be that defendant Jackson-Allen is a bailee for defendant Wycombe, but this court is not required to rule on and makes no determination of this question.
Accordingly, judgment for plaintiff in the amount demanded in the complaint together with costs, disbursements and interest from April 13, 1982.